### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARIA N O.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 22-4024-JWL |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on November 9, 2018 and November 5, 2018, respectively. (R. 15, 283-92). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously relied upon the opinions of three agency medical and psychological consultants in assessing Plaintiff's residual functional capacity (RFC) and erroneously found Dr. Fluter's opinion only partially persuasive.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

**II.    Discussion**

The court finds it first necessary to consider the Commissioner's argument that Plaintiff has waived her argument by failing to develop it.  The Commissioner argued:

> In her brief, Plaintiff generally attacks the ALJ's consideration of the prior administrative medical findings and medical opinions and argues the ALJ should have given more weight to opinions from Plaintiff's doctors (ECF No. 8, Plaintiff's Brief (Pl. Br.) 11-17).  But critically, Plaintiff fails to identify or describe a single medical opinion from one of her doctors (see generally Pl. Br.; see 20 C.F.R. § 404.1513(a)(2) (defining medical opinion)).  Instead, other than citing various pages of the administrative record where the ALJ's decision and hearing transcript are found, Plaintiff only provides citations to a handful of other pages of the record, none of which contain a medical opinion about Plaintiff's functional limitations (Pl. Br. 2-18, citing AR 52, 378, 489, 2503, 494, 549, 531, 2783, 2841).

4

> Accordingly, Plaintiff's argument is wholly undeveloped and should be deemed waived.  See Keyes-Zachary, 695 F.3d [1156,] 1161 [(10th Cir. 2012)] ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."); Kirkpatrick v. Colvin, 663 F. App'x 646, 649 (10th Cir. 2016) (it is not the court's "obligation to search the record and construct a party's arguments."); Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument." (citation and quotation omitted)).

(Comm'r Br. 5).  Plaintiff did not file a Reply Brief contesting the Commissioner's argument.

Although the court might have accepted the Commissioner's argument as unopposed, it believes the better course is to address and clarify the issue.  In the argument section of her Brief, Plaintiff cites legal authority for the arguments she makes, but cites to no record evidence for her arguments that the decision is erroneous or that the evidence does not support the ALJ's findings.  Other than the decision or the hearing transcript, in only eleven of her numbered statements of fact did Plaintiff cite to specific record evidence:

> 5. Claimant has received treatment from Southwest Neuroscience & Spine for her spinal and neurological conditions dating back to 2013. R. at 489.
>
> \*\*\*
>
> 7. Claimant received treatment from Southwest Medical Center for her spinal and neurological conditions dating back to 2017. R. at 489.
>
> 8. Claimant received treatment from Abay Neuroscience Center for her spinal and neurological conditions dating back to 2018. Id. at 2503.
>
> 9. Claimant received treatment from Southwest Family Medicine for her spinal and neurological conditions dating back to 2018. Id. at 494.
>
> 10. Claimant has received treatment from Southwest Care Clinics for her spinal and neurological conditions dating back to 2018. Id. at 549.

>11. Claimant underwent spinal surgery in 2018. Id. at 661.
>
>12. Claimant underwent physical therapy related to her spinal and neurological conditions in 2018. Id. at 698.
>
>13. Claimant was evaluated by Dr. Fluter at Advance Anesthesia & Pain Management for her spinal and neurological conditions in 2018. Id. at 531.
>
>14. Claimant received treatment from Hodgeman County Medical Services for her spinal and neurological conditions in 2019. Id. at 2783.
>
>15. Claimant received treatment from Heartland Cardiology for her cardiac conditions in 2021. Id. at 2841.
>
>.\*\*\*
>
>24. Claimant has problems getting along with others, to include family, friends, neighbors, etc. R. at 378.

(Pl. Br. 2-4).

Most of the facts asserted are innocuous and unsupportive of Plaintiff's specific allegations of error. However, page 549 of the record, cited in support of Facts #10 and #11, is the first page of a treatment note of Dr. Desai wherein he suggests that Plaintiff should "Avoid lifting heavy weight (not more than 10 lbs), pushing and punching maneuvers." (R. 554). Moreover, Fact #13 is the first page of Dr. Fluter's report of his independent medical examination findings. These two treatment records relate to Plaintiff's argument that the ALJ erred in evaluating the medical opinions but Plaintiff does not explain how they demonstrate error in the ALJ's evaluation or compel a different result. The court does not find that Plaintiff has waived her argument, but as the Commissioner points out, it isn't the court's responsibility "to search the record and construct a party's arguments." Kirkpatrick, 663 F. App'x at 649 (citing Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)).

### A.     Arguments

Plaintiff first argues the ALJ erred in evaluating the opinions[2] of the state agency consultants, Dr. Markway, Dr. McCall, and Dr. Bland.  (Pl. Br. 11).  She argues, broadly:

> The opinions in questions are not medical reports but consultant reports hired by the agency to evaluate claims.  They never see the claimant.  They did not in this case.  They only briefly summarize the opinions.  They do not explain their analysis.  There is no examination or opinions of their own based upon the claimant.  They solely base their opinion on a medical review of the records.
>
> Also, contrary to the ALJ's assertion, we cannot tell what they really evaluated.  They barely reference the main impairing conditions.  They clearly did not have all of the opinions of the treating doctors, as treatment was provided long after the dates they did the medical review.
>
> This then raises the issues [sic] whether or not these non-examining opinions can be used as substantial evidence.  They did not have all of the evidence.  The evidence was not fully developed at the time they issued their opinions.  In short, their opinions lacked proper foundation to be used in any way as substantial evidence to support the ALJ's decision.

Id. 11-12.

Plaintiff purports to apply four of the regulatory factors used to evaluate persuasiveness and argues the consultants' opinions do not meet those factors.  Id. 12-13 (citing 20 C.F.R. §404.1520c).  She argues the supportability and consistency factors are not met because the state agency consultants did not have all the medical evidence to

---

[2] The term for the reports prepared by state agency medical and psychological consultants is "prior administrative medical findings."  "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  Although the term is broader in scope than a "medical opinion," id. at §§ 404.1513(a)(2), 416.913(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

7

consider in forming their opinions. (Pl. Br. 12-13). She argues the opinions "fail" the relationship factor because none of them had any relationship with Plaintiff. Id. 13. She argues the doctor's opinions "completely fail" the specialization factor because:

> The doctors relied upon by the ALJ have no specialization whatsoever in the field of musculoskeletal impairments. We have no idea whatsoever what kind of specialties or certifications the non-examining State [sic] agency medical consultants may or may not have. For purposes of this case, they were doctors hired by the agency to review medical records. They are medical records reviewers. They are not specialist in the field of spinal disorders or neurological disorders.

Id.

Plaintiff next argues the ALJ's finding Dr. Fluter's opinion only partially persuasive is not supported by the record: "it just is flawed and directly contradicts objective medical testing." Id. 14. She argues, "ample evidence supports Dr. Fluter's opinions" and purports to apply the regulatory factors to his opinion. Id. 15. She argues the supportability factor is met because his "evaluation consists of objective tests that show and confirm the existence of moderate to severe impairments … [and] is substantial competent evidence that was improperly discounted by the ALJ." Id. The consistency factor is met, in Plaintiff's view, because "Dr. Fluter's opinions are consistent with the opinions of all of Claimant's other providers." Id. Plaintiff argues the relationship factor is positive for Dr. Fluter because he and other of her providers are the only ones in the record to have a treating or examining relationship with Plaintiff. Id. 15-16. As to specialization, Plaintiff argues, "Several of Claimant's providers specialize in musculoskeletal issues. They are the providers in the record geared to treat this condition

8

making it a mystery as to why the doctors with training on the main disabling condition was [sic] ignored. (Pl. Br. 16).

Plaintiff concludes her argument:

> In short, Dr. Fluter's and the remainder of Claimant's providers' opinions were substantial evidence of overwhelming nature (as stated in Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1175 (10th Cir. 2014)) that were ignored and that undercuts [sic] or detracts [sic] from the decision (as stated in Mays v. Colvin, 739 F.3d 569, 576 (10th Cir. 2014)[)].
>
> The ALJ ignored this substantial, competent evidence. The case should be remanded with directions to properly consider the findings of Dr. Fluter and Claimant's orthopedists, spinal surgeons, and neurologists.

Id. 17.

The Commissioner argues the record evidence supports the ALJ's persuasiveness findings respecting all medical opinions including the state agency medical consultants[3] (Dr. McCall and Dr. Bland), Dr. Fluter, and Dr. Stubbs. (Comm'r Br. 6-7). She argues the ALJ found all these medical opinions partially persuasive and explained how he resolved the disparities between the opinions. She also argues he properly found other opinions suggesting temporary limitations unpersuasive. Id. at 8. She argues Plaintiff's arguments are requests to reweigh the evidence or generic attacks without citation to record evidence demonstrating the alleged error. Id. at 8-10.

### B.     Stndard for Evaluating Persuasiveness of Medical Opinions

---

[3] Plaintiff acknowledges Plaintiff's Brief also mentions the state agency psychological consultant, Dr. Markway, but correctly argues "this is entirely irrelevant to Plaintiff's challenge to the ALJ's assessed physical residual functional capacity because Dr. Markway was a state agency psychologist who offered findings only on Plaintiff's mental limitations." (Comm'r Br. 6, n.3).

9

The Commissioner revised the regulations regarding the evaluation of medical evidence in 2017.  In making that revision, the Commissioner explained:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions <u>and less on weighing treating relationships</u> against each other. This approach is more consistent with current healthcare practice.

<u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).  That revision included a new regulation entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017).  The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5) (2017).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  <u>Id.</u>

The regulation explains that the decision will articulate <u>how persuasive</u> the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. § 404.1520c(b) (2017).  The articulation requirement applies for each source, but not for each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1) (2017).  It requires

10

that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section (relationship, specialization, and other factors), as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2) (2017).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3) (2017).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d) (2017).

### C. The ALJ's Findings[4]

The ALJ evaluated the persuasiveness of the opinions of Dr. McCall and Dr. Bland, the state agency medical consultants; Dr. Stubbs, who performed an examination of Plaintiff at the request of the agency; Dr. Fluter, who performed an independent medical examination; and the numerous opinions respecting temporary limitations:

> The undersigned finds partially persuasive the prior administrative finding of State [sic] agency medical consultant Donna McCall, D.O., who found

---

[4] The court notes the ALJ evaluated Dr. Markway's opinion respecting Plaintiff's mental abilities and limitations in his step two discussion and found it "generally persuasive." (R. 22).  However, because Plaintiff's allegations of error relate to the physical RFC assessment, the court does not address that evaluation here.

11

the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently (Exhibits 5A, 6A). She can stand and/or walk for a total of 2 hours with normal breaks and sit for a total of 6 hours in an 8-hour workday with normal breaks (Exhibits 5A, 6A). She can occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch, and crawl (Exhibits 5A, 6A). She can occasionally reach overhead with the right upper extremity (Exhibits 5A, 6A). She should avoid concentrated exposure to vibration and hazards (Exhibits 5A, 6A). Overall, this finding is partially consistent with and supported by the medical evidence of record, particularly in the claimant's ability to lift and/or carry. However, as noted above, the claimant has not consistently demonstrated lower extremity dysfunction that suggests she would be unable to walk for 6 of 8 hours (Exhibits 4F at 9; 11F at 13; 12F at 4; 15F at 18). As noted by Dr. Stubbs, her allegations do not fully align with the objective evidence (Exhibit 23F). There are similar suggestions elsewhere in the record, as well (Exhibit 10F at 499). Although recent records do exhibit some focal weakness, the extent of the weakness is not described and has not been consistently observed at other examinations (Exhibit 22F). The residual functional capacity in this assessment is more restrictive than that of Dr. McCall but is more consistent with the record as a whole.

The undersigned finds partially consistent [the] prior administrative finding of State [sic] agency medical consultant Judee Bland, M.D., who found the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently (Exhibits 1A, 2A). She can stand and/or walk for a total of 6 hours in an 8-hour workday and sit for a total of 6 hours in an 8-hour workday with normal breaks (Exhibits 1A, 2A). She can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, but may never climb ladders, ropes, or scaffolds (Exhibits 1A, 2A). She is limited in reaching in front and/or laterally and overhead with the right upper extremity (Exhibits 1A, 2A). She should avoid concentrated exposure to vibration and hazards (Exhibits 1A, 2A). Again, this finding is partially consistent with and supported by the medical evidence of record, particularly in the claimant's ability to stand and/or walk. However, as discussed above, a 10 pound exertional limitation is warranted for at least 12 months following the alleged onset date. Examination findings have shown positive Spurling's testing, mildly diminished strength, 4/5 grip strength, and signs of shoulder impingement (Exhibits 2F at 5; 18F at 47, 59). After the ACDF [spinal surgery], she continued to demonstrate 4/5 strength in her right upper extremity with mildly reduced reflexes (Exhibit 18F at 18, 90). She also subsequently demonstrated tenderness but normal range of motion in August 2019 (Exhibit 22F at 74). The residual

12

functional capacity in this assessment is more restrictive than that of Dr. Bland but is more consistent with the record as a whole.

The undersigned finds partially persuasive the opinion of consultative examiner Dr. Stubbs, who opined the claimant can stand or walk for a full workday (Exhibit 23F at 5). She can lift/carry objects without restrictions (Exhibit 23F at 5). She can sit for a full workday (Exhibit 23F at 5). She can hold a conversation, respond appropriately to questions, and remember/carry out instructions (Exhibit 23F at 5). Overall, this opinion is partially consistent with and supported by the medical evidence of record, including his own examination and a partial review of the record. However, the claimant is more limited in her ability to lift and/or carry than suggested by his examination, despite the numerous inconsistencies identified by Dr. Stubbs (Exhibit 23F). The evidence does suggest neck, back, and right upper extremity impairments with corresponding objective findings that would limit the claimant's ability to lift greater than 10 pounds (Exhibits 2F at 5; 18F at 18, 47, 59, 90; 22F at 74).

The undersigned finds partially persuasive the opinion of independent medical examiner George Fluter, M.D., who opined the claimant can lift, carry, push, and pull 10 pounds occasionally and negligible weight frequently (Exhibit 3F at 14). She can occasionally use the right arm for activities at or above the shoulder level and greater than 24 inches away from the body (Exhibit 3F at 14). She can occasionally use the right elbow for repetitive flexion, extension, pronation, supination, radial deviation, and ulnar deviation (Exhibit 3F at 14). She can occasionally grasp with the right hand (Exhibit 3F at 14). Overall, this opinion is partially consistent with and supported by the medical evidence of record. Although the opinion is dated, it is based on a review of the claimant's treatment history and the right upper extremity restrictions appear to reasonably evaluate her abilities for at least a 12-month period following the alleged onset date. Although more recent evidence suggests that the claimant is no longer so limited, her limited cooperation with the consultative evaluation somewhat frustrates the undersigned's ability to adequately assess her current functional ability. Although Dr. Fluter suggests that the claimant would be limited to a sedentary exertional level, the evidence before and after the claimant's October 2018 motor vehicle accident has indicated the ability to ambulate with a normal gait with no neurological deficits (Exhibits 4F at 9; 11F at 13; 12F at 4; 15F at 18).

The undersigned finds unpersuasive the numerous temporary restrictions contained in the record (Exhibits 6F at 2; 10F at 90; 15F at 56, 68; 18F at 49). The most reasonable inference from the context of these opinions is

13

> that they are impliedly temporary restrictions not intended to limit the claimant for more than a short period of time. As temporary restrictions, the opinions do not render complete statements as to the claimant's condition throughout the relevant period of alleged disability.

(R. 36-37).

### D. Analysis

As quoted above, the ALJ's evaluation of the opinion evidence was thorough, in accordance with 20 C.F.R. 404.1520c, well-reasoned, carefully explained, and supported by citation to the record evidence—as discussed earlier in the ALJ's decision. Plaintiff's Brief does not demonstrate error in the decision below.

Plaintiff's application of the regulatory factors misses the point of the ALJ's findings and of the regulations. Other than the opinions respecting temporary limitations, which the ALJ found unpersuasive, he found all the opinions at issue here only partially persuasive. (R. 36-37). In other words, he found each of the opinions had aspects which were supported by objective medical evidence and the providers explanation and consistent with other medical opinions and the record evidence, and aspects which were not so supported or consistent. Id. The ALJ articulated his rationale for his consistency and supportability findings and Plaintiff points to no record evidence to compel, or even suggest, finding otherwise.

The relationship and specialization factors are not required to be articulated in the decision. 20 C.F.R. § 404.1520c(b)(2) (2017). As to relationship, the ALJ specifically recognized Dr. McCall and Dr. Bland are state agency medical consultants who only review the record medical evidence and that Dr. Fluter and Dr. Stubbs examined Plaintiff

14

and provided reports based on their examinations. Plaintiff points to no record evidence to compel, or even suggest, that Dr. Fluter's opinion be found persuasive and the other opinions be found unpersuasive. Moreover, although the ALJ found "Dr. Fluter suggests that the claimant would be limited to a sedentary exertional level," he also found "the evidence before and after the claimant's October 2018 motor vehicle accident has indicated the ability to ambulate with a normal gait with no neurological deficits" (R. 37), and it is by no means clear that Dr. Fluter opined sedentary restrictions in sitting, standing and/or walking and his exertional and right arm restrictions appear to fit within the RFC assessed.

Plaintiff argues, "Several of Claimant's providers specialize in musculoskeletal issues. They are the providers in the record geared to treat this condition making it a mystery as to why the doctors with training on the main disabling condition was [sic] ignored." (Pl. Br. 16). However, Plaintiff does not argue and the record does not demonstrate that Dr. Fluter had any specialization which would require his opinion to be credited over that of the other physicians whose opinions were evaluated here. Moreover, as noted above in the legal standard applicable here, the SSA adopted new "rules that focus more on the content of medical opinions and less on weighing treating relationships against each other" because "[t]his approach is more consistent with current healthcare practice." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,854, 2017 WL 168819.

In short, Plaintiff has not pointed to any evidence demonstrating any error in the ALJ's decision below. Much of her argument merely seeks to have the court reweigh the

15

evidence more favorably to her.  That is something it is not permitted to do.  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 28, 2023, at Kansas City, Kansas.

 s/John W. Lungstrum
_____
**John W. Lungstrum
United States District Judge**